IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| **MIRROR IMAGING, LLC,** *Plaintiff* | § § § § § § § § § § | |
| -vs- | | W-21-CV-00518-ADA |
| **PNC BANK, N.A.,** *Defendant* | | |

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS**
[ECF No. 10]

Before the Court is Defendant PNC Bank, N.A.'s ("PNC" or "Defendant") Rule 12(b)(6) Motion to Dismiss based on collateral estoppel and patent ineligibility under 35 U.S.C. § 101 (the "Motion"). ECF No. 10. After considering the parties' briefs, oral arguments, and applicable law, the Court **DENIES** Defendant's Motion for the following reasons.

## I.  BACKGROUND

### A.  Procedural Background

On May 21, 2021, Mirror Imaging, LLC ("Mirror Imaging" or "Plaintiff") filed the instant lawsuit against PNC, asserting that PNC infringed U.S. Patent Nos.: 9,928,275 (the "'275 patent"); 10,013,435 (the "'435 Patent"); 10,262,009 (the "'009 Patent"); and 10,402,447 (the "'447 Patent") (collectively, the "Asserted Patents").[1] ECF No. 1 (the "Complaint"). Defendant PNC states that collateral estoppel bars Mirror Imaging from alleging infringement of the Asserted Patents because the Patent Trial and Appeal Board (the "PTAB") "found each of the

---

[1] Plaintiff Mirror Imaging is asserting the following claims: Claims 1, 5, and 8 of the '275 patent; Claims 11, 12, and 13 of the '435 Patent; Claims 14, 16, 18, and 21 of the '009 Patent; and Claims 1, 6, 7, 8, 11, 19, 21, 22, and 26 of the '447 Patent (collectively, the "Asserted Claims"). *See* ECF No. 19-1 at 1–2.

1

Parent Patents unpatentable because they were directed to ineligible subject matter."[2] ECF No. 10 at 4. Each of the Asserted Patents are continuations of the Parent Patents. *Id.* The Complaint states that each of the Asserted Patents relate to solving a technological problem centered on the "selective archiving and retrieving of financial documents stored in separate electronic storage systems by using an unconventional interface linked to *both* storage systems." ECF No. 1 ¶ 20 (emphasis in original). Mirror Imaging accuses PNC of infringing its Asserted Patents directly "by making, using, importing, selling, and/or offering for sale the Accused PNC Instrumentalities." ECF No. 1 ¶¶ 61, 81, 101, 121.

On July 15, 2021, PNC moved to dismiss Mirror Imaging's Complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6) for asserting claims that are invalid under 35 U.S.C. § 101. *See* ECF No. 10 at 1, 20. That Motion is now fully briefed and ripe for judgment.

### B. The Asserted Patents

All the Asserted Patents are titled "Remote Document Retrieval and Storage System," all claim priority to the same provisional application, and all share similar specifications.[3] Each of the Asserted Patents are continuations of four patents that were the subject of *Inter Partes* Review petitions, *supra*. The PTAB found each of the Parent Patents unpatentable because they were directed to ineligible subject matter. The parties dispute the similarities between the "invalidated" Parent Patents, and the Asserted Patents at issue in this case. Certain distinct claim language from the Asserted Patents was addressed in the PTAB's review of the Parent Patents and the prosecution history of the Asserted Patents. The PTAB invalidated the Parent Patents while the patent examiner allowed the Asserted Claims comprising the same or similar language

---

[2] The following four patents were the subject of *Inter Partes* Review petitions: U.S. Patent Nos. 6,963,866 (CBM2017-00064); 7,552,118 (CBM2017-00065); 7,836,067 (CBM2017-00066); and 9,141,612 (CBM2017-00067) (collectively, the "Parent Patents").

[3] The application leading to the '447 Patent is a continuation of the application that issued as the '009 Patent, which is a continuation of the application that issued as the '435 Patent, which is a continuation of the application that issued as the '275 Patent.

at issue in each of the proceedings. Ultimately, however, the PTAB's invalidation was vacated by the Federal Circuit pursuant to the Supreme Court's *Arthrex* decision. *See* ECF No. 18-1 (Fed. Cir. Case Nos. 2019-2026, -2027, -2028, and -2029). *See also Arthrex, Inc. v. Smith & Nephew, Inc.*, 941 F.3d 1320 (Fed. Cir. 2019) (holding the appointment of the PTAB's Administrative Patent Judges by the Secretary of Commerce violates the Appointments Claus, U.S. Const. art. II, § 2, cl. 2.).

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

A party may move to dismiss a claim if the complaint has "fail[ed] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 663. When considering a Rule 12(b)(6) motion, a court must assume that all well-pled facts are true and view them in the light most favorable to the non-moving party. *See Bowlby v. City of Aberdeen*, 681 F.3d 215, 218 (5th Cir. 2012). However, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft*, 556 U.S. at 678.

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Therefore, the section 101 inquiry may be properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718–19 (Fed. Cir. 2014)

(Mayer, J., concurring). However, resolution of a patent's section 101 eligibility is not always appropriate at the Rule 12(b) motion to dismiss stage without the benefit of claim construction. *See Slyce Acquisition Inc. v. Syte-Visual Conception Ltd.*, No. W-19-CV-00257-ADA, 2020 WL 278481, at *3 (W.D. Tex. Jan. 10, 2020).

### B.     Collateral Estoppel

"Collateral estoppel protects a party from having to litigate issues that have been fully and fairly tried in a previous action and adversely resolved against a party-opponent." *Ohio Willow Wood Co. v. Alps South, LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013). "The issue of whether to apply collateral estoppel is a question of law." *Bradberry v. Jefferson Cty.*, Tex., 732 F.3d 540, 549 (5th Cir. 2013). Thus, the issue of whether to apply collateral estoppel may be properly addressed in a motion to dismiss. *See, e.g.*, *NetSoc, LLC v. Oath Inc.*, No. 18-CV-12267 (RA), 2020 WL 419469, at *1 (S.D.N.Y. Jan. 24, 2020); *Arunachalam v. Exxon Mobil Corp.*, No. 6:19-CV-00171-ADA, 2019 WL 10303695, at *1 (W.D. Tex. June 26, 2019). Regional circuit law governs the general procedural question of whether collateral estoppel (i.e., issue preclusion) applies, but Federal Circuit law governs questions involving substantive issues of patent law. *Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1314 (Fed. Cir. 2015). For example, "the question whether a particular claim in a patent case is the same as or separate from another claim has special application to patent cases, and [a court should] therefore apply [Federal Circuit] law to that issue." *Ohio Willow*, 735 F.3d at 1342 (citations omitted). The Fifth Circuit has held that collateral estoppel applies if: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision."[4] *Bradberry*, 732 F.3d at 548.

---

[4] The Fifth Circuit also recognizes a fourth element, namely, "whether there are any special circumstances that make it unfair to apply the doctrine" of collateral estoppel. *Bradberry*, 732 F.3d at 548. However, this element is only

Administrative decisions can have preclusive effect when the administrative agency acted in a judicial capacity to resolve disputed fact issues that the parties had the adequate opportunity to litigate. *SynQor, Inc. v. Vicor Corp.*, 988 F.3d 1341, 1347 (Fed. Cir. 2021). Furthermore, a ruling on an issue in a prior judgment can have preclusive effect even if the issue raised in a later case involves different patents and different claims. *See Ohio Willow*, 735 F.3d at 1342. The patent claims need not be identical, but "substantially related" so that the issues of validity are materially the same. *Id*. "If the differences between the unadjudicated patent claims and adjudicated patent claims do not materially alter the question of invalidity, collateral estoppel applies." *Id*. However, a patent is not materially the same merely because it is closely related. *e.Digital Corp. v. Futurewei Tech., Inc*., 772 F.3d 723, 727 (Fed. Cir. 2014). "A continuation-in-part, for instance, may disclose new matter that could materially impact the interpretation of a claim, and therefore require a new claim construction inquiry." *Id*. A court must therefore make an independent determination that the issues of invalidity are identical in each patent related to an invalidated patent before applying collateral estoppel. *Id*.

### C. Patent Eligibility

Section 101 defines subject matter eligible for patenting as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. The Supreme Court has long read exceptions into section 101: laws of nature, natural phenomena, and abstract ideas are not patentable. *See, e.g.*, *Diamond v. Diehr*, 450 U.S. 175, 185 (1981). According to the Court, these are the fundamental tools of scientific endeavor and granting monopolies over them risks dousing the flame of innovation the U.S. patent regime is meant to fan. *See Gottschalk v. Benson*, 409 U.S. 63, 67 (1972); *Mayo Collaborative Servs. v.*

---

considered in offensive use of collateral estoppel by the plaintiff. *Id.* at 548-549; *Kariuki v. Tarango*, 709 F.3d 495, 506 (5th Cir. 2013). The fourth element does not apply in this case since it involves defensive use of collateral estoppel by the defendant.

*Prometheus Lab'ys, Inc.*, 566 U.S. 66, 71 (2012); *see also Le Roy v. Tatham*, 55 U.S. (14 How.) 156, 175 (1852) ("A principle, in the abstract, is a fundamental truth; an original cause; a motive; these cannot be patented, as no one can claim in either of them an exclusive right.").

### i. *The state of patent eligibility jurisprudence.*

In recent years, divining the bounds of these judicial exceptions has proved increasingly challenging, thanks in large part to the Supreme Court's 2014 decision in *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208 (2014). There the Court established a two-step framework for determining whether a patent claims an ineligible concept. First, determine whether the claims are "directed to" a judicial exception. *Id.* at 217. If so, proceed to the second step and "consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Id.* (omitting quotations).

This framework is "almost impossible to apply consistently and coherently" in the context of abstract ideas. *Smart Sys. Innovations, LLC v. Chi. Transit Auth.*, 873 F.3d 1364, 1377 (Fed. Cir. 2017) (Linn, J., dissenting-in-part and concurring-in-part); *Yu v. Apple Inc.*, 1 F.4th 1040, 1049 (Fed. Cir. 2021) (Newman, J., dissenting) ("In the current state of Section 101 jurisprudence, inconsistency and unpredictability of adjudication have destabilized technologic development in important fields of commerce."). Members from every branch of the federal government have decried the uncertain state of section 101 law and begged guidance from the Supreme Court, Congress, or both. *See CareDx, Inc. v. Natera, Inc.*, No. CV 19-0567-CFC-CJB, 2021 WL 4439600, at *5 (D. Del. Sept. 28, 2021) (collecting quotes from current and former Federal Circuit judges describing the uncertainty infecting section 101 law); *Slyce*, 2020 U.S. Dist. LEXIS 9451, at *19 (same); Brief for United States, *HP Inc. v. Berkheimer*, No. 18-415, 2019 WL 6715368, at *10–13 (Dec. 6, 2019) (responding to call for views of the Solicitor

6

General, requesting the Supreme Court's guidance on patent eligibility standards); Brief for United States, *Hikma Pharms. USA Inc. v. Vanda Pharms. Inc.*, No. 18-817, 2019 WL 6699397, at *13–21 (Dec. 6, 2019) (same). At this point, it is trite to comment on the confusing abyss of patent eligibility law. Still, it is an inevitable result as courts and commentators attempt to reconcile the caselaw to predict and determine whether a patent ought to be invalidated.

### ii. *Disposition at the motion to dismiss stage.*

Recent Federal Circuit jurisprudence has hampered courts' authority to issue ineligibility determinations at a case's earliest stages. For example, some opinions recognize that resolution of section 101 motions is inappropriate until after claim construction. *See, e.g.*, *MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1379 (Fed. Cir. 2019); *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273–74 (Fed. Cir. 2012); *Slyce*, 2020 U.S. Dist. LEXIS 9451, at *19. Others have recognized that deciding Rule 12(b)(6) motions invoking section 101 requires factual presumptions favoring non-movants.

In *Aatrix Software, Inc. v. Green Shades Software, Inc.*, for example, the Federal Circuit acknowledged how factual issues undergird both *Alice* steps. 882 F.3d 1121 (Fed. Cir. 2018). And because a court considering a Rule 12(b)(6) motion must accept a complaint's factual allegations as true, a complaint can recite concrete allegations regarding *Alice*'s underlying factual issues to guard its asserted patents from an early ineligibility determination. *See id.* at 1128; *see also Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (describing presumptions favoring non-movants in this Circuit); *M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, 890 F.3d 995, 999 (Fed. Cir. 2018) ("In the procedural posture of a motion to dismiss, a district court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor."). When the complaint contains concrete allegations regarding the "claimed combination's improvement to the

7

functioning of the computer," the asserted patents can survive a Rule 12(b)(6) motion at *Alice* step one. *Aatrix*, 882 F.3d at 1128. And when the complaint contains concrete allegations that "individual elements and the claimed combination are not well-understood, routine, or conventional activity," the asserted patent can survive a Rule 12(b)(6) motion at *Alice* step two. *Id.*

In short, accused infringers invoking section 101 in a Rule 12(b)(6) motion face an uphill scrabble. *See Slyce*, 2020 U.S. Dist. LEXIS 9451, at *14. It is now well established that patents are presumed valid. *See Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 97 (2011). Overcoming that presumption demands clear and convincing evidence, even in the eligibility context. *See Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019). Indeed, any fact "pertinent to the invalidity conclusion must be proven by clear and convincing evidence." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). PNC has not overcome these procedural obstacles.

### iii.     *Representative Claims.*

A district court may analyze representative claims for patent eligibility where all the asserted and challenged claims are substantially similar and linked to the same purported abstract idea. That concept comes from, *inter alia*, *Content Extraction & Transmission LLC v. Wells Fargo Bank, National Association*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) and *Cleveland Clinic Foundation v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017). The parties disagree as to whether claim 1 of the '275 Patent is representative for purposes of this section 101 challenge. Because PNC proposes that Claim 1 of the '275 Patent is representative, a finding that any of the Asserted Patents survives a section 101 challenge necessarily permeates and defeats PNC's motion to dismiss as to all of the Asserted Patents. As described in detail

below, the Court need not address the representative argument as such a finding applies in this case.

### III. DISCUSSION

#### A. Collateral Estoppel

PNC contends that the PTAB's invalidation of the Parent Patents estops Mirror Imaging from arguing that the Asserted Patents are eligible. ECF No. 10 at 8. PNC argues that the claims of the Asserted Patents do not materially differ from the invalidated claims of the Parent Patents. ECF No. 10 at 9. To support its position, PNC provides a chart comparing the claims of the Asserted Patents to the invalidated claim 9 of the Parent Patent, U.S. Pat. No. 9,161,612. *See* ECF No. 10-1. Mirror Imaging responds that the new asserted claims contain "substantial improvements and additional limitations which render them" distinct from the earlier Parent Patents and capture inventive concepts in their own right. ECF No. 18 at 1. Such limitations include: "(i) a single interlinked interface between the processor, the first storage system, and the second storage system; (ii) performing automatic comparisons, without human intervention; and (iii) automatically accessing the first or second storage system." *Id.* PNC rebuts that interlinking was conventional, and that inclusion of a second system for the interlink is not a material difference from the invalidated claims. ECF No. 19 at 1. PNC further argues that automation itself does not constitute a patentable improvement. *Id.* at 1–2.

Mirror Imaging further contests that the PTAB's Final Written Decision was *vacated* by the Court of Appeals for the Federal Circuit. *See* ECF No. 18-1. Accordingly, Mirror Imaging argues that no final ruling remains on anything relating to eligibility of the Asserted Patents. PNC argues that the reason for vacating the PTAB's Final Written Decision, a result of the

Federal Circuit's *Arthrex* decision, does not bear on any substantive defect with the PTAB's analysis and should therefore still constitute collateral estoppel. ECF No. 19 at 3.

As previously noted, collateral estoppel applies if (1) the issue at stake is identical, or substantially similar, to the one in the prior action, (2) the issue was actually litigated in the prior action, and (3) the determination of the issue in the prior action was a necessary part of the *judgment* in that earlier action. *See Hacienda Records, L.P. v. Ramos*, 718 Fed. App'x 223, 228 (5th Cir. 2018); *see also Ohio Willow*, 735 F.3d at 1342. Here, the parties dispute whether the first and third elements are met. The Court finds that PNC's collateral estoppel argument fails under both of the disputed elements. First, the PTAB's Final Written Decision was *vacated* and consequently not final. Second, although there is significant overlap and similarities between the '612 Patent (the invalidated Parent Patent) and the Asserted Patents, the Court does not believe that it is in a position to fully evaluate the scopes of and differences between the two patents at this stage of the litigation such that they can be deemed sufficiently similar.

> **i.    *The Asserted Patents are not bound by an adverse judgment that was vacated.***

When a civil judgment is reversed on appeal, it is no longer "valid" and retains zero preclusive effect. *Langley v. Prince*, 926 F.3d 145, 164 (5th Cir. 2019). The same should be said when a judgment is vacated. *See U.S. Philips Corp. v. Sears Roebuck & Co.*, 55 F.3d 592, 598 (Fed. Cir. 1995) ("a vacated judgment has no preclusive force either as a matter of collateral or direct estoppel or as a matter of the law of the case") (quoting *No East-West Highway Committee, Inc. v. Chandler*, 767 F.2d 21, 24 (1st Cir. 1985)) (internal quotations marks omitted); *see also* 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE § 4432 (3d ed. 2018) ("There is no preclusion as to the matters vacated or reversed, unless further proceedings on remand lead to a new judgment that expands

the scope of preclusion . . . Reversal and remand for further proceedings on the entire case defeats preclusion entirely until a new final judgment is entered by the trial court or the initial judgment is restored by further appellate proceedings."). Neither party disputes that the entirety of the PTAB's Final Written Decision was vacated. *See* ECF No. 18-1. Instead, Defendant simply disputes the impact of the vacated orders. Given that the Federal Circuit vacated the entire decision, and that the parties never reached final judgment on remand, Mirror Imaging cannot be estopped from asserting the Asserted Patents.

### ii. *Absent claim construction, the claims of the Asserted Patents cannot be found to be substantially similar to the claims invalidated by the PTAB.*

Likewise, it is premature to determine whether the claims from the Asserted Patents are identical to those invalidated by the PTAB. To begin, this Court has not had a chance to construe any claim terms of the Asserted Patents in light of the claim languages, written description, and prosecution history. PNC argues that no claim construction is required in order to make these eligibility determinations. Mirror Imaging disagrees, stating that claim construction is necessary and that the deadline to identify terms for construction is months away. Nonetheless, Mirror Imaging provides several terms that, in its view, will require construction and are material to eligibility. *See* ECF No. 18 at 2. Without a full understanding of the claimed subject matter and the real significances of the apparent differences between the claim languages, it would be imprudent for the Court to determine whether the Asserted Patents are substantially similar absent claim construction. *See Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d at 1273–74 ("[I]t will ordinarily be desirable—and often necessary—to resolve claim construction disputes prior to a section 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter."). Claim construction is not always necessary to make this determination. However, after a cursory

11

review, the Court is convinced that Mirror Imaging's proposed terms for claim construction highlight potentially material differences rendering an ultimate finding that the claims are identical premature. The prosecution history of the Asserted Patents indicates the same conclusion. *See* ECF No. 18 at 14–15; *see also* ECF No. 1 ¶¶ 20-23, 27, 28, 38-50.

Everything considered, PNC asks the Court to (1) find that the Asserted Patents are invalid under section 101 based on the PTAB's Final Written Decision, despite being vacated by the Federal Circuit, (2) hold that the apparent differences between the claims of the '612 Patent and the Asserted Patents are "immaterial" before the Court could have a chance to closely examine the claim differences with the benefit of claim construction, and (3) apply collateral estoppel to find all the Asserted Patents are invalid under section 101. The Court refuses to defer to a vacated judgment and will not entertain PNC's claim comparison, particularly at this juncture. Thus, Plaintiff is not collaterally estopped from contesting the Asserted Patents' ineligibility under Section 101.

### B. 35 U.S.C § 101

At a high level, PNC argues that the Asserted Patents "claim nothing more than the 'longstanding,' 'routine,' and 'conventional' concept of organizing, storing, and retrieving financial documents." ECF No. 10 at 11. PNC contends that Mirror Imaging "claim[s] the idea of automating a bank teller using generic computer systems," and is thus directed to an abstract idea. ECF No. 19 at 5. For *Alice* Step 2, PNC argues that no inventive concept exists, as the "unconventional architecture" Mirror Imaging relies on is "nowhere to be found in the claims." *Id.* at 6. PNC further argues that Claim 1 of the '275 Patent is representative and that arguments to the contrary simply rehash Mirror Imaging's deficient position that the asserted claims are different from the Parent Patents due to the addition of generic automation and "interlinking." ECF No. 19 at 3.

Mirror Imaging characterizes PNC's motion as a "gross oversimplification of the Asserted Claims" that also relies on a premise that "virtually no invention remotely relating to a financial record retrieval system can be patent eligible." ECF No. 18 at 3. Plaintiff argues that its specific factual allegations highlight certain benefits and technological improvements over the prevailing art. ECF No. 18 at 7. Mirror Imaging further disagrees that Claim 1 of the '275 Patent is representative of all asserted claims and specifically points to Claim 14 of the '009 Patent and its automatic comparison of parameters by the processor, Claim 16 of the '009 Patent which recites the automatic reproduction of the requested financial document, and Claim 11 of the '447 Patent that includes the interlinked interface. ECF No. 18 at 18. For similar reasons, Plaintiff argues that these consequentially non-representative limitations further spotlight the inventive concepts contained within the Asserted Patents to survive *Alice* Step 2. Last, Plaintiff places heavy reliance on the prosecution of the patent, arguing that Defendant's arguments were already rejected by the Examiner who ultimately granted the Asserted Patents.

> ***i.  Step 1: The Asserted Claims are not directed to an abstract idea.***

PNC summarizes its analysis of the Asserted Patents, assuming Claim 1 of the '275 Patent is representative, as "claim[ing] the abstract concept of organizing, storing, and retrieving financial documents." ECF No. 10 at 12. "Accessing documents that have been classified and stored in multiple locations is not patentable because it is a 'longstanding commercial practice.'" *Id.* In other words, Mirror Imaging seeks to "patent the activity of a bank teller by using computers and the Internet." ECF No. 19 at 4.

Mirror Imaging states that Defendant's "customary boilerplate argument" fails as it is a gross oversimplification with an underlying premise that "virtually no invention remotely relating to a financial record retrieval system can be patent eligible." ECF No. 18 at 3. Instead, Mirror Imaging argues that the claims' focus is on a "solution [to] a problem specifically arising

in the realm of computers," and is a "'specific' improvement in computer capabilities or network functionality, rather than only claiming a desirable result or function." ECF No. 18 at 12. The Court agrees.

Step 1 requires that the Court inquire as to "what the patent asserts to be the 'focus of the claimed advance over the prior art.'" *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1292 (Fed. Cir. 2020) (quoting *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1168 (Fed. Cir. 2019)). The focus must remain on the claim language, in light of the specification. *Id.* Courts must remain tethered to the claim language, lest exceptions to section 101 swallow the rule as overgeneralizations can almost always create a high level of abstraction. *Id.* at 1293. "In cases involving software innovations, this inquiry often turns on whether the claims focus on specific asserted improvements in computer capabilities or instead on a process or system that qualifies an abstract idea for which computers are invoked merely as a tool." *Uniloc USA, Inc. v. LG Electronics USA, Inc.*, 957 F.3d 1303, 1306–07 (Fed. Cir. 2020). Courts have found claims are directed to patent eligible matter in two approaches: (1) "whether the focus of the claimed advance is on a solution to a problem specifically arising in the realm of computer networks or computers," and "whether the claim is properly characterized as identifying a 'specific' improvement in computer capabilities or network functionality, rather than only claiming a desirable result or function." *TecSec, Inc. v. Adobe Inc.*, 978 F.3d at 1293 (collecting cases) (internal quotation marks omitted).

The Court notes the subject matter of the cases upon which Defendant relies, namely *Alice*,[5] *TLI*,[6] *Intellectual Ventures*,[7] *eDekka*,[8] and *Content Extraction*,[9] invalidated claims

---

[5] *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 220 (2014).
[6] *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 615 (Fed. Cir. 2016).
[7] *Intellectual Ventures I LLC v. Capital One Financial Corp.*, 850 F.3d 1332, 1340 (Fed. Cir. 2017).
[8] *eDekka LLC v. 3Balls.com, Inc.*, No. 2:15-CV-541 JRG, 2015 WL 5579840, at *3 (E.D. Tex. Sept. 21, 2015).

directed to classifying, storing, labeling, displaying, manipulating, or collecting data or images. *See* ECF No. 10 at 12. But, for the same reason courts have been consistently cautioned to avoid overgeneralizing claims, such cases are not directly analogous to the claims in the Asserted Patents. Instead, the Court finds that the "directed to" inquiry is more analogous to that in *TecSec*. In an effort to distinguish the difference between an overgeneralized approach to that of a specific inquiry of the focus of the patent, the Federal Circuit explained:

> In light of what the claim language and specification establish, we conclude that the claims are directed to improving a basic function of a computer data-distribution network, namely, network security. The patent makes clear that the focus of the claimed advance is on improving such a data network used for broadcasting a file to a large audience, with the improvement assertedly being an efficient way for the sender to permit different parts of the audience to see different parts of the file. While non-computer settings may have security issues addressed by multilevel security, it does not follow that all patents relating to multilevel security are necessarily ineligible for patenting. Here, although the patent involves multilevel security, that does not negate the conclusion that the patent is aimed at solving a particular problem of multicasting computer networks.
>
> \*\*\*
>
> The patent claims at issue here are directed to improving a data network's basic functioning by enabling secure and efficient transmission to intended recipients when use is made of the basic multicasting functionality of such a data network. As the district court said, the claims address the data-network problem presented by multiple users in multiple locations accessing information at different security levels from a central repository.
>
> *TecSec*, 978 F.3d at 1296 (internal quotation marks and citations omitted).

As noted in prior opinions of this Court, it is more an art than a science to draw artificial lines that map out section 101 jurisprudence, often requiring the courts to compare subject matter in analyzing case precedent. *See Health Discovery Corp. v. Intel Corp.*, 6:20-cv-666-ADA, 2021 WL 6116891, at \*10 (W.D. Tex. Dec. 27, 2021). However, despite similar subject matter, i.e., financial data from ATMs in *Content Extraction*, the language of the Asserted Claims draws a

---

[9] *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014).

stark contrast between simply storing (abstract) and *interlinking* (non-abstract). *See* 776 F.3d at 1347 (holding that the claims were drawn to the basic concept of data recognition and storage). Indeed, loose relations between invalidated patents focused on mere document retention do not require the same invalidation of the Asserted Patents. Here, the alleged improvement includes "obtaining electronically-stored financial documents from multiple storage systems by providing a direct *inter-linked* interface." ECF No. 18 at 12 (emphasis added).

Of course, the Court has yet to construe any proposed terms of the Asserted Claims. But, as previously noted, the Court believes a material difference exists such that deference to the Plaintiff's pleading is required. And, as pled, the Court agrees that Plaintiff has met its pleading burden to negate a patent eligibility challenge at *Alice* Step 1: the Asserted Claims are directed to improving the functionality of financial document retrieval systems using certain document parameters for the storage systems and *interlinking* the storage systems through a common interface. *See* ECF No. 1 ¶¶ 19-23, 25. Plainly, Defendant's characterization is untethered to the claim language, whereas Plaintiff's pleadings sufficiently allege that the Asserted Patents are directed to non-abstract ideas. As PNC argues that Claim 1 of the '275 Patent is representative of all Asserted Claims, the Court's finding that PNC's eligibility challenge fails at Step 1 in this pleading stage, for any of the Asserted Patents, will apply to all of the Asserted Patents.

### ii. Step 2: The claims involve an inventive concept beyond what was well-understood, routine, and conventional.

Although unnecessary to the court's analysis, Defendant's section 101 challenge is further belied by ample evidence in Plaintiff's Complaint that the claim limitations involve an inventive concept beyond what was well-understood, routine, and conventional. *Alice*'s second step requires examining "the elements of the claim to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application."

573 U.S. at 221 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. at 72, 80). The second step is satisfied when the claim limitations "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Content Extraction*, 776 F.3d at 1347–48. And whether "the claim elements or the claimed combination are well-understood, routine, [and] conventional is a question of fact." *Aatrix*, 882 F.3d at 1128.

As noted in Plaintiff's Complaint, as of the priority date, "providers in the financial services industry were configured in such a way that archived documents were stored in either on-site or off-site facilities in one of 'microfiche, microfilm, digitally, or by some other electronic storage means.'" ECF No. 1 ¶ 18. "The concept of interlinking multiple data storage facilities via an electronic interface to accomplish record retrieval without the substantial back-office effort was unconventional as of the date of the invention." *Id. See also* '447 Patent at 2:25-52. The intrinsic record, as pled in Plaintiff's Complaint, further supports the conclusion that Defendant's section 101 challenge fails at *Alice* Step 2.

> Among other things, as of the date of invention: (i) there were no service providers in the industry servicing bank clients without having the client perform more labor to outsource retrievals; (ii) banks were required to perform additional re-keying of information and use additional manpower in order to outsource retrievals; (iii) banks were not inclined to outsource retrievals due to the prohibitive costs; and (iv) outsourcing services were not cost-effective or efficient. The claimed technological solution, however, overcame these deficiencies while improving efficiencies, reducing costs, and technologically improving banking systems. Moreover, the inventions received contemporaneous industry praise for providing transparent digital retrieval, reducing staffing requirements, and reducing costs for equipment and service contracts. Such facts establish the unconventionality of the technological solution and the inventive concepts captured in the claims.
>
> The inventions as claimed add substantially more than the mere retrieval of financial records. Rather, and as explained in the intrinsic record, they provide a hybrid on-site and third party (offsite) storage solution within a single interface interlinked with both storage systems. Moreover, the inventions as claimed

include components arrayed in a distributed architecture that minimizes the impact on network and system resources.

ECF No. 1 ¶ 20-21 (internal citations omitted).

The Court must view Defendant's motion to dismiss through a lens that accepts Plaintiff's factual allegations as true. *Aatrix Software*, 882 F.3d at 1128. Furthermore, factual issues may exist that guard against an ineligibility determination early in the case. *Id. See also M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, 890 F.3d at 999 ("In the procedural posture of a motion to dismiss, a district court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor."). When the complaint contains concrete allegations that "individual elements and the claimed combination are not well-understood, routine, or conventional activity," the Asserted Patents can survive a section 101 motion couched in a Rule 12(b)(6) motion to dismiss. *Id.* Plaintiff's Complaint is replete with concrete allegations sufficient to defeat Defendant's patent eligibility challenge. *See* ECF No. 1 ¶¶ 18-21, 24-26, 34, 35. PNC's disagreement with Mirror Imaging's concrete allegations is a matter to be determined another day. Certainly, its disputes do not warrant invalidation of the asserted Patents in a Rule 12(b)(6) motion to dismiss.

## IV. CONCLUSION

For the reasons above, the Court finds that PNC's Motion to Dismiss should be and hereby is **DENIED**.

SIGNED this 26th day of January, 2022.

    **ALAN D ALBRIGHT**
    **UNITED STATES DISTRICT JUDGE**